UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-00893-PAB-KMT

DELBERT SGAGGIO,

    Plaintiff,

v.

DOUGLAS COUNTY SHERIFF TONY SPURLOCK, and
JOHN OR JANE DOES 1-7,

    Defendants.

## SHERIFF SPURLOCK'S MOTION TO DISMISS

Defendant Douglas County Sheriff Tony Spurlock ("Sheriff Spurlock"), by and through the Douglas County Attorney's Office, hereby moves to dismiss the claims asserted against him in the Complaint and Jury Trial Demand (Doc. 1, "Complaint") of Plaintiff, Delbert Sgaggio, pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).

## INTRODUCTION

Plaintiff's Complaint asserts a § 1983 claim against Sheriff Spurlock for a violation of his First Amendment rights based on the alleged removal of comments he posted on a Douglas County Sheriff's Office ("DCSO") Facebook page. While the Complaint contains numerous allegations describing the comments Plaintiff posted and the research that allegedly prompted Plaintiff's comments, it contains no factual allegations evidencing Sheriff Spurlock's knowledge of, let alone involvement in, removing the comments or of any circumstances suggesting that removal of Plaintiff's comments occurred because of a DCSO policy or custom. Plaintiff's failure to allege such facts necessarily precludes his claims against Sheriff Spurlock in either his individual or

1

official capacity.

## BACKGROUND

Plaintiff alleges that he is journalist who specializes in matters including civil rights, police misconduct and racism. (Doc. 1 ¶ 2.) He alleges that he conducted research into a shooting on December 31, 2017, in Highlands Ranch, Colorado in which a resident, Matthew Reihl, exchanged gunfire with law enforcement at his home, during which four Douglas County Sheriff's deputies were wounded and one deputy, Zackari Parrish, was killed, two civilians were shot, and Mr. Reihl was subsequently killed by a SWAT tactical team (the "Incident"). (*Id.* ¶ 13, 19.) Plaintiff alleges that he became interested in the Incident after researching and hearing testimony on Colorado House Bill 19-1177 and learning that the bill was named after Deputy Parrish. (*Id.* ¶ 10-12.)

Plaintiff alleges that he wrote a report about his research into the Incident in which he appears to conclude that law enforcement did not have a legal right to be in Mr. Reihl's residence at the time of the shootings and that the response by DCSO's deputies on December 31, 2017 was retaliation for Mr. Reihl's previous challenge of what he believed to be a frivolous speeding ticket and/or for shutting the door on law enforcement on the date of the Incident. (Doc. 1 ¶¶ 15, 17, 19, 20, 27, 29.) Plaintiff alleges that he posted comments on the official Facebook page for DCSO regarding his conclusions about the Incident. (*Id.* ¶¶ 33-34.)

The Complaint alleges that Jane and/or John Does, who are alleged to be public servants working for DCSO, removed Plaintiff's comments from the DCSO Facebook page. (*Id.* ¶¶ 8, 39.) Plaintiff alleges Sheriff Spurlock is the "top supervisor" at DCSO, supervises the Jane and/or John Does who removed the comments, and "failed to [i]ntervene and or supervise." (*Id.* ¶¶ 7, 40-41.) According to the Complaint, Sheriff Spurlock "should have supervised and stopped the unconstitutional actions committed by Jane and or John Does that did violate [Plaintiff's] rights."

(*Id.* ¶ 57.)

## ARGUMENT

Plaintiff asserts a single claim under 42 U.S.C. § 1983 against Sheriff Spurlock and Jane and John Doe "public servants working for [DCSO]" for an alleged violation of his First Amendment rights. The Complaint does not specify whether Sheriff Spurlock is named in his individual capacity or his official capacity. As set forth more fully below, the Complaint fails to plead facts sufficient to state a claim under § 1983 for either theory. If the allegations against Sheriff Spurlock are brought in his individual capacity, as a supervisor of the individuals that purportedly removed Plaintiff's comments from DCSO's Facebook page, the Complaint lacks the requisite allegations of personal involvement necessary to state such a claim. Moreover, Tenth Circuit law clearly establishes that Sheriff Spurlock must have had personal involvement in the alleged constitutional violation to be individually liable as a supervisor under § 1983, entitling him to qualified immunity. If the allegations against Sheriff Spurlock are brought in his official capacity, the Complaint is devoid of factual allegations establishing a municipal policy or custom that caused any claimed constitutional deprivation as well as deliberate indifference on the part of DCSO. Accordingly, Plaintiff's claims against Sheriff Spurlock should be dismissed.

### I.   STANDARD OF REVIEW.

To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to raise a reasonable expectation that discovery will reveal evidence of" the wrongful conduct complained of. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Although a court must accept all factual allegations pled in a complaint as true, "dismissal is appropriate where 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Al-Owhali v. Holder*, 687 F.3d 1236, 1240 (10th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662,

679 (2009)). In the absence of "enough facts to state a claim to relief that is plausible on its face[,]" a plaintiff has not "nudged their claims across the line from conceivable to plausible, [and] their complaint must be dismissed." *Twombly*, 550 U.S. at 570.

As a *pro se* litigant, Plaintiff is entitled to have his pleadings liberally construed and held to a less stringent standard than is applicable to pleadings drafted by lawyers. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The Tenth Circuit construes this standard to mean "that if the court can reasonable read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Id*. It does not, however, allow a district court to assume the role of an advocate for a pro se plaintiff or "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. N.M.*, 113 F.2d 1170, 1173-74 (10th Cir. 1997).

## II.   THE COMPLAINT DOES NOT PLEAD AN INDIVIDUAL CLAIM FOR SUPERVISORY LIABILITY.

The term "supervisory liability" is something of a misnomer in the context of a claim against an individual under § 1983. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013). A supervisor is not liable for the acts of a subordinate under a theory of respondeat superior. *Id.* Rather, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.* (quoting *Iqbal*, 556 U.S. at 677)). "'Individual liability under § 1983 must be based on [the defendant's] *personal involvement* in the alleged constitutional violation.'" *Id.* at 768 (quoting *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997)) (alteration in original) (emphasis added); *see also Schneider*, 717 F.3d at 767 (to assert a § 1983 claim against an individual based on their supervisory responsibilities, a plaintiff must

4

demonstrate "(1) personal involvement; (2) causation; and (3) state of mind").

Plaintiff's Complaint lacks factual allegations that would establish any of the requisites for establishing supervisory liability against Sheriff Spurlock, beginning with personal involvement. The Complaint does not contain any factual allegations evidencing Sheriff's Spurlock's active involvement in removing comments from DCSO's Facebook page. *See Burnett v. Fallin*, 785 F.App'x 546, 550 (10th Cir. 2019) (to state a claim for supervisory liability, a plaintiff must show "'an affirmative link between the supervisor and the violation, namely the active participation or acquiescence of the supervisor in the constitutional violation by the subordinates'") (quoting *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006)); *Pahls v. Thomas*, 718 F.3d 1210, 1226 (10th Cir. 2013) (a plaintiff proceeding under a supervisory liability theory must "identify the specific policies over which particular defendants possessed responsibility and that led to the alleged constitutional violation").  Instead, Plaintiff alleges that Sheriff Spurlock is the "top supervisor" at DCSO and that he failed to intervene or supervise unknown workers at DCSO who purportedly removed Plaintiff's comments from the DCSO Facebook page.  (Doc. 1 ¶¶ 39-41.) These allegations are insufficient to establish personal involvement.  *See Burnett*, 785 F.App'x at 550 (merely alleging that an individual is in the supervisory chain is not sufficient to establish supervisory liability); *Schneider*, 717 F.3d at 767 (a supervisor's mere knowledge of the subordinate's conduct is not sufficient to establish supervisory liability).

Plaintiff's Complaint also lacks facts sufficient to show causation.  "A plaintiff [must] establish the 'requisite causal connection' by showing 'the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her [or his] constitutional rights.'"  *Schneider*, 717 F.3d at 768 (quoting *Dodds v. Richardson*, 614 F.3d 1185, 1185 (10th Cir. 2010)) (first alteration in original, second alteration

added). Plaintiff's Complaint does not allege any conduct on the part of Sheriff Spurlock that "set in motion" the acts of any DCSO workers in allegedly removing Plaintiff's posts from the DCSO Facebook page. *See Pahls*, 718 F.3d at 1226 ("[I]t is incumbent upon a plaintiff to 'identify *specific* actions taken by *particular* defendants' in order to make out a viable § 1983 . . . claim.") (quoting *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 532-33 (10th Cir. 1998)) (emphasis added in *Pahls*). Again, the Complaint appears to allege the opposite—that unknown DCSO workers purportedly removed Plaintiff's comments and Sheriff Spurlock did not stop them. (*See* Doc. 1 ¶¶ 39-41.)

Finally, the Complaint fails to plead facts that evidence Sheriff Spurlock acted with the requisite state of mind. "In § 1983 . . . actions, a claim of viewpoint discrimination in contravention of the First Amendment requires a plaintiff to show that the defendant acted with a viewpoint-discriminatory purpose." *Pahls*, 718 F.3d at 1227. The Complaint contains a single, conclusory allegation that "[o]f [c]ourse Tony Spurlock and Defendants John and or Jane Does would not agree with these view points and that's why my Memes were removed." (Doc. 1 ¶ 36); *cf. Iqbal*, 556 U.S. at 679 (finding pleadings that are no more than conclusion are not entitled to the assumption of truth, explaining that "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations"). The Complaint does *not* contain any factual allegations evidencing that Sheriff Spurlock had any knowledge of Plaintiff's postings or of any alleged actions by DCSO workers removing the postings from DCSO's Facebook page, let alone factual allegations from which it may be inferred that Sheriff Spurlock engaged in any conduct specifically because of the viewpoint expressed in Plaintiff's comments. Absent such allegations, Plaintiff cannot show that Sheriff Spurlock acted with the requisite state of mind to have violated Plaintiff's First Amendment rights. The mere assertion that Sheriff Spurlock

presumably would not agree with Plaintiff's comments does not render him individually liable under § 1983 based on his supervisory role at DCSO.

The Complaint's failure to establish any of the elements of a supervisory liability claim against Sheriff Spurlock precludes individual liability under § 1983. Accordingly, Sheriff Spurlock should be dismissed as a defendant in his individual capacity.

**III.   SHERIFF SPURLOCK IS ENTITLED TO QUALIFIED IMMUNITY AS A SUPERVISOR.**

"Individual defendants named in a § 1983 action may raise a defense of qualified immunity[.]" *Pauly v. White*, 874 F.3d 1197, 1214 (10th Cir. 2019). "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Escobar v. Mora*, 496 F.App'x 806, 813 (10th Cir. 2012) (citation omitted). "Qualified immunity is an affirmative defense to a section 1983 action, providing immunity from suit from the outset." *Toler v. Troutt*, 631 F.App'x 545, 547 (10th Cir. 2015) (quoting *DeSpain v. Uphoff*, 264 F.3d 965, 971 (10th Cir. 2001)). "[Q]ualified immunity serves to protect the defendant not just from personal liability but also from the ordeal of litigation." *Apodaca v. Raemisch*, 864 F.3d 1071, 1075 (10th Cir. 2017).

When issues of qualified immunity are raised in a motion to dismiss, the Court credits a plaintiff's well-pled allegations as true, and the Court's determination involves only questions of law. *Id.* Once a defendant raises the issue of qualified immunity, "the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Pauly*, 874 F.3d at 1214 (citations omitted). District courts are entitled "to exercise their sound discretion in deciding which of the two prongs of the qualified immunity

7

analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

To the extent the Complaint is intended to plead a claim for supervisory liability against Sheriff Spurlock in his individual capacity, Sheriff Spurlock is entitled to qualified immunity because the conduct he is alleged to have engaged in does not violate a clearly established constitutional right of Plaintiff. Sheriff Spurlock is alleged to be a supervisor of John and/or Jane Does that purportedly removed Plaintiff's comments from the DCSO Facebook page and to have not taken action to prevent John and/or Jane Does from removing those comments. (*See* Doc. 1 ¶¶ 39-41.) These allegations can, at best, be construed to assert liability based upon Sheriff's Spurlock's status as a supervisor, and Tenth Circuit law clearly establishes that "[s]upervisory status alone *does not* create § 1983 liability." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (emphasis added); *see also*, *e.g.*, *Bertolo v. Benezee*, 601 F.App'x 636, 639 (10th Cir. 2015) (rejecting supervisory liability claim where plaintiff failed to allege that defendant's role "was more than 'one of abstract authority over individuals who actually committed a constitutional violation'") (quoting *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008)); *Stone v. Albert*, 338 F.App'x 757, 759 (10th Cir. 2009) (rejecting plaintiff's assertion that jail medical director was liable for any constitutional violations of prisoners' right to medical treatment because of his status as supervisor of the prison's medical department); *Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008) ("supervisor status is not sufficient to create § 1983 liability").

Plaintiff's inability to plead facts evidencing personal involvement by Sheriff Spurlock (*cf.* § II, *supra*) is not only indicative of a deficiently pled claim, it establishes Sheriff Spurlock's entitlement to qualified immunity. *See Pahls*, 718 F.3d at 1227 ("[A]lthough the requirement of personal participation, including the question of supervisory liability, is a component of liability

under § 1983 and *Bivens*, we also incorporate it into our qualified-immunity analysis, where we ask whether a clearly established constitutional right has been violated."). As a result, any individual claim against Sheriff Spurlock should also be dismissed because Sheriff Spurlock is qualifiedly immune.

## IV. THE COMPLAINT DOES NOT STATE A CLAIM FOR MUNICIPAL LIABILITY.

"An action against a person in his official capacity is, in reality, an action against the government entity for whom the person works." *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1009 (10th Cir. 1998). To state a § 1983 claim against a governmental entity, a plaintiff must allege the existence of: (1) an official policy or custom; (2) a direct causal link between the policy or custom and the constitutional injury alleged; and (3) deliberate indifference on the part of the municipality. *Schneider*, 717 F.3d at 769-771 (a plaintiff must "show that the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury").

A governmental entity is not liable under § 1983 for the acts of its employees under a respondeat superior or vicarious liability theory. *Pietrowski*, 134 F.3d at 1009. Rather, the governmental entity "must be shown to have contributed to the constitutional violation through execution of its policy or custom." *Id.* The "official policy or custom" requirement is "intended to distinguish acts of the *municipality* from acts of the *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (emphasis in original).

A plaintiff can establish the existence of a municipal policy or custom by demonstrating any of the following:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the

>basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Waller v. City of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019). Plaintiff's Complaint contains conclusory assertions that Sheriff Spurlock maintains a policy or custom that was allegedly the cause of Plaintiff's injury (*see* Doc. 1 ¶¶ 42) but is devoid of any factual allegations which, if true, establish the existence of any of the foregoing means for demonstrating an official policy or custom.

### A. Plaintiff Has Not Pled The Existence Of A Formal Policy.

The Complaint does not—and could not—allege that DCSO maintains a formal policy authorizing its employees to remove comments from its Facebook page if the viewpoints expressed in the comments are ones with which DCSO disagrees. Plaintiff's Complaint does not identify any formal regulation or policy statement of DCSO directing or authorizing the removal of such content.

### B. Plaintiff Has Not Pled An Unofficial Custom Or Practice.

Similarly, the Complaint does not plead any facts suggesting DCSO has an unofficial custom or practice of removing comments from its Facebook page if the viewpoint expressed in the comments is contrary to that of DCSO. Establishing a custom requires proof of "acquiescence in a longstanding practice or custom which constitutes the 'standard operating procedure' of the local governmental entity." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989).

Plaintiff's factual allegations do not establish a longstanding practice. To the contrary, the Complaint alleges only a single occurrence of comments having been removed from the DCSO Facebook page—that of Plaintiff's comments regarding the Incident, which is the subject of his Complaint. That single occurrence is insufficient to plead an unofficial custom or practice. *See*

*Waller*, 932 F.3d at 1290 (allegations of one prior similar occurrence "fall far short of plausibly alleging a 'widespread practice' of excessive force, much less a practice 'so permanent and well settled as to constitute a custom or usage with the force of law'"); *Williams v. City of Tulsa*, 627 F.App'x 700, 704 (10th Cir. 2015) (one similar prior incident prompting two administrative complaints failed to indicate persistent and widespread practice); *see also Carney v. City & Cty. of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008) ("A 'custom' has come to mean an act that, although not formally approved by an appropriate decision maker, has such widespread practice as to have the force of law.  In order to establish a custom, the actions of the municipal employees must be 'continuing, persistent and widespread.'") (citations omitted); *Mitchell v. City & Cty. of Denver*, 112 F.App'x 662, 672-73 (10th Cir. 2004) (multiple allegations of discriminatory conduct by one employee directed at two other employees over a period of years did not rise to the level of a custom and practice of the governmental entity).

Plaintiff's allegations are also devoid of any facts evidencing that Sheriff Spurlock, whom Plaintiff alleges is the relevant policymaker (*see* Doc. 1 ¶¶ 7, 42), had any knowledge of a putative widespread practice by DCSO employees of removing comments from DCSO's Facebook page based upon the viewpoint expressed in the comments.  The absence of such factual allegations further precludes a finding that Plaintiff has adequately pled an unofficial custom or practice.  *See*, *e.g.*, *Wentz v. Park Cty. Sch. Dist. No. 16*, No. 91-8042, 1992 WL 149914, *5 (10th Cir. June 26, 1992) (finding plaintiff had failed to establish custom of unconstitutional conduct as matter of law where there was no evidence the policymakers knew of the wrongful conduct and thus could not evidence a policy or custom of deliberate indifference to the wrongful conduct); *see also*, *e.g.*, *Krell v. Queen Anne's Cty.*, No. JKB-18-637, 2018 WL 6523883, *16 (D. Md. Dec. 12, 2018) (to establish a *Monell* claim of custom by condonation, a plaintiff must prove "a 'persistent and

11

widespread' practice so longstanding and pervasive as to indicate that 'policymakers (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their deliberate indifference'") (citation omitted).

### C. Plaintiff Has Not Pled A Decision By An Authorized Policymaker.

Plaintiff's Complaint does not allege facts evidencing that anyone with policymaking authority made the decision to remove comments from the DCSO Facebook page. "The inquiry of whether a government employee is a policy-making official is a question of state law." *Brammer-Hoelter v. Twin Peaks Charter Academy*, 602 F.3d 1175, 1189 (10th Cir. 2010). "In deciding whether an official is a final policymaker, 'we are interested only in delegations of *legal power*.'" *Id.* (citation omitted) (emphasis in original).

Plaintiff does not allege that his comments were removed by a final policymaker. Indeed, the opposite is alleged to have occurred here. According to the Complaint, Jane and/or John Does working at DCSO are alleged to have removed the content and Sheriff Spurlock, whom Plaintiff alleges to be a policymaker, is alleged to have failed to "[i]ntervene and or supervise." (Doc. 1 ¶¶ 7, 39, 40.) These factual allegations do not support a municipal policy predicated on a decision by a final policymaker.

### D. Plaintiff Has Not Pled Ratification.

The Complaint is also devoid of any facts that could establish ratification. Municipal liability under section 1983 based upon a ratification theory requires factual allegations establishing that a final decision-maker has ratified an employee's specific unconstitutional actions, as well as the basis for those actions. *Bryson v. City of Okla. City*, 627 F.3d 784, 790 (10th Cir. 2010). Plaintiff's only allegations regarding Sheriff Spurlock are that he failed to "intervene and or supervise" the workers that purportedly removed Plaintiff's comments from the DCSO

Facebook page.  (Doc. 1 ¶¶ 40-41.)  Plaintiff has not alleged any facts which, if true, would demonstrate that Sheriff Spurlock was made aware the comments had been removed specifically because of the viewpoint expressed in the comments and that Sheriff Spurlock ratified the removal and the reason for the removal.  The lack of any such factual allegations precludes municipal liability predicated on ratification of the allegedly unconstitutional conduct.

### E. Plaintiff Has Not Pled Deliberately Indifferent Failure To Train Or Supervise.

A plaintiff bears a heavy burden when asserting a municipal claim based on an alleged failure to train or supervise.  A municipality may be liable for a failure to adequately train or supervise its employees only where that failure results from the municipality's deliberate indifference to the injuries caused as a result.  *Brammer-Hoelter v. Twin Peaks Charter Academy*, 602 F.3d 1175, 1189 (10th Cir. 2010).  As the Tenth Circuit has explained, the deliberate indifference standard "is a 'stringent standard of fault[.]'"  *Murphy v. City of Tulsa*, 950 F.3d 641, 650-51 (10th Cir. 2019) (citations omitted).  "To satisfy this stringent standard, [a plaintiff] need[s] to show that the [municipality] had 'actual or constructive notice that its action or failure to act [was] substantially certain to result in a constitutional violation' and 'consciously or deliberately [chose] to disregard the risk of harm.'"  *Id.* (citations omitted); *see also Connick v. Thompson*, 563 U.S. 51, 61 (2011) ("'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.'") (citation omitted); *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) ("Only where a failure to train [or supervise] reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by our prior cases—can a city be liable for such a failure under § 1983.") (alteration added).

A plaintiff may be able to establish deliberate indifference on the part of a municipality "when the municipality has actual or constructive notice that its action or failure is substantially

certain to result in a constitutional violation, and it consciously and deliberately chooses to disregard the risk of harm." *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1318 (10th Cir. 2002) (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1999)). Typically, a plaintiff must be able to establish a pattern of constitutional violations of a similar nature by untrained or unsupervised employees to meet the stringent standard of deliberate indifference. *Waller*, 932 F.3d at 1285. "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.* (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)). As the Supreme Court has explained, a more lenient standard "would result in *de facto respondeat superior* liability on municipalities . . . ." *Connick*, 563 U.S. at 62 (quoting *City of Canton*, 489 U.S. at 392).

Plaintiff's allegations fall short of meeting the heavy burden of establishing municipal liability predicated on a failure to train or supervise. The Complaint is devoid of factual allegations establishing a pattern of constitutional violations akin to those alleged by Plaintiff that could even arguably demonstrate deliberate indifference at the municipal level. Plaintiff's reliance on this single incident fails to satisfy his burden to "show a defendant had actual or constructive knowledge that a *particular omission* . . . caused officials to violate citizens' constitutional rights and nonetheless [made] a conscious choice" to allow constitutionally violative conduct on the part of DCSO workers to continue. *Carmody v. Ensminger*, No. 16-cv-02603-PAB-NYW, 2017 WL 4150601, at *5 (D. Colo. Sept. 19, 2017) (citing *Connick*, 563 U.S. at 61) (emphasis in original)).

Ultimately, Plaintiff's allegations fail to link any claimed individual violation of his First Amendment rights to a municipal policy or custom that was moving force behind the alleged violation. Absent such allegations, any claim by Plaintiff against Sheriff Spurlock in his official

capacity must be dismissed.

## CONCLUSION

WHEREFORE, for the reasons set forth herein, all claims in the Complaint directed against Douglas County Sheriff Tony Spurlock should be dismissed in their entirety, with prejudice, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

Respectfully submitted this 28th day of June, 2021,

          OFFICE OF THE COUNTY ATTORNEY
          DOUGLAS COUNTY, COLORADO

          *s/ Dawn L. Johnson*
          Sean Kelly Dunnaway
          Dawn L. Johnson
          Megan L. Taggart
          Douglas County Deputy County Attorney
          100 Third Street
          Castle Rock, CO  80104
          Telephone:  303-660-7414
          E-mail: kdunnawa@douglas.co.us;
          djohnson@douglas.co.us; mtaggart@douglas.co.us

## CERTIFICATE OF SERVICE

      **I HEREBY CERTIFY** that on this 28th day of June, 2021, I electronically filed the foregoing **SHERIFF SPURLOCK'S MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all parties of record, and that I caused a true and correct copy of the same to be mailed, by first-class U.S. mail, postage prepaid, to the following:

Delbert Sgaggio
1850 North Academy Boulevard
Colorado Springs, CO 80909



                                                  */s/ Dawn L. Johnson*

*Pursuant to USDC ECF Procedure V.C.6, a printed copy of this document with original signatures will be maintained by the Office of the Douglas County Attorney and made available for inspection upon request.*