IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21–cv–00893–PAB–KMT

DELBERT SGAGGIO,

     Plaintiff,

v.

DOUGLAS COUNTY SHERIFF TONY SPURLOCK, and
JOHN OR JANE DOES 1–7

     Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Magistrate Judge Kathleen M. Tafoya**

This case comes before the court on the following motions:

1.  "Sheriff Spurlock's Motion to Dismiss" (Doc. No. 9 [Mot. Dismiss], filed June 28, 2021), to which Plaintiff did not file a response; and

2.  Plaintiff's "Motion for Leave to File a Second Amended Complaint" (Doc. No. 19 [Mot. Amend], filed August 29, 2021), to which Defendant responded in opposition (Doc. No. 21 [Resp. Mot. Amend], filed September 20, 2021), and Plaintiff did not file a reply.

## STATEMENT OF THE CASE

Plaintiff, who proceeds *pro se*, filed his Complaint on March 26, 2021. (Doc. No. 1 [Compl.].) Plaintiff asserts one claim against the defendants for their alleged violations of his First Amendment rights. (*Id.* at 28–31.) Plaintiff states on March 27, 2019, he posted memes and comments on the Douglas County Sheriff's Office ("DCSO") official Facebook page. (*Id.*, ¶ 33.) Plaintiff alleges the defendants removed the posts. (*Id.*, ¶ 39.) Plaintiff states Defendant Tony Spurlock was the Sheriff of Douglas County and the top supervisor and policy maker at the Douglas County Sheriff's Office, and he failed to intervene to stop the removal of the posts. (*Id.*, ¶¶ 7, 40–42.) Plaintiff alleges the removal of the posts violated his First Amendment free speech rights. (*Id.*, ¶ 50.) Plaintiff seeks compensatory, declaratory, and injunctive relief. (*Id.* at 31.)

Defendant Spurlock moves to dismiss the claims against him in their entirety pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). (*See* Mot.)

## STANDARDS OF REVIEW

### A. Pro Se *Plaintiff*

Plaintiff is proceeding *pro se*. The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). *See also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has

violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). *See also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). The plaintiff's *pro se* status does not entitle him to application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

## B.   *Lack of Subject Matter Jurisdiction*

Federal Rule of Civil Procedure Rule 12(b)(1) empowers a court to dismiss a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case. Rather, it calls for a determination that the court lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than the allegations of the complaint. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). A court lacking jurisdiction "must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *See Basso*, 495 F.2d at 909. The dismissal is without prejudice. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006); *see also Frederiksen v. City of Lockport*, 384 F.3d 437, 438 (7th Cir. 2004) (noting that dismissals for lack of jurisdiction should be without prejudice because a dismissal with prejudice is a disposition on the merits which a court lacking jurisdiction may not render).

A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).  When considering a Rule 12(b)(1) motion, however, the Court may consider matters outside the pleadings without transforming the motion into one for summary judgment. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). Where a party challenges the facts upon which subject matter jurisdiction depends, a district court may not presume the truthfulness of the complaint's "factual allegations . . . [and] has wide discretion to allow affidavits, other documents, and [may even hold] a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id.*

### C.    *Failure to State a Claim Upon Which Relief Can Be Granted*

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility, in the context of a motion to dismiss, means

that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 679–81. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 679.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments. *S. Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.* (citation omitted).

## ANALYSIS

### A.    *Motion to Dismiss*

#### 1.    *Eleventh Amendment Immunity*

The Eleventh Amendment to the United States Constitution states:  "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  It has been interpreted to bar a suit by a citizen against the citizen's own state in federal court.  *Johns v. Stewart*, 57 F.3d 1544, 1552 (10th Cir. 1995).  Suits against state officials in their official capacity should be treated as suits against the state.  *Hafer v. Melo*, 502 U.S. 21, 25 (1991).  This is because a suit against a state official in his or her official capacity is a suit against the official's office and therefore is no different from a suit against the state itself.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  The Eleventh Amendment thus shields state officials, acting in their official capacities, from claims for monetary relief.  *See Hill v. Kemp*, 478 F.3d 1236, 1255–56 (10th Cir. 2007).  Moreover, a § 1983 action may only be brought against a person.  *See* 42 U.S.C. § 1983.  Neither states nor state officers sued in their official capacity for monetary damages are persons within the meaning of § 1983.  *Will*, 491 U.S. at 70–71.

Therefore, Plaintiff's official-capacity claims for money damages are barred by the Eleventh Amendment and should dismissed for lack of subject matter jurisdiction.[1]  *Hunt v. Bennett*, 17 F.3d 1263, 1267 (10th Cir. 1994).

---

[1] Defendant did not move for the dismissal of the official-capacity claims for money damages. However, the court has a duty to consider its subject matter jurisdiction *sua sponte*, Fed. R. Civ. P. 12(h)(3).  *See also McAlester v. United Air Lines, Inc.*, 851 F.2d 1249, 1252 (10th Cir. 1988)

### 2.      *Qualified Immunity*

Defendant argues he is entitled to qualified immunity on any individual capacity claim asserted against him.  (Mot. at 7–9.)

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).  The court has discretion to address the "clearly established" element before addressing whether a constitutional violation actually occurred.  *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).

Once the defendant raises a qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the law was clearly established at the relevant time.  *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014); *Lybrook v. Members of Farmington Mun. Sch. Bd. of Educ.*, 232 F.3d 1334, 1337 (10th Cir. 2000).  "A right is clearly established in this circuit when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as the plaintiff maintains."  *Thomas*, 765 F.3d at 1194 (internal quotation marks omitted).

### a.      *Supervisory Liability*

Plaintiff asserts a First Amendment claim against Defendant Spurlock based on Defendant Spurlock's role as "top supervisor and policy maker at the Douglas County Sheriff's Office."  (*Id.*, ¶ 7.)

---

(The issue of subject matter jurisdiction may be raised *sua sponte* by the court at any time during the course of the proceedings.).

Supervisory officials may be held liable in their individual capacity.  However, § 1983 does not allow claims against supervisors under a theory of respondeat superior liability.  *Cox v. Glanz*, 800 F.3d 1231, 1248 n.9 (10th Cir. 2015).  A § 1983 claim against a defendant is his personal capacity for supervisory liability "allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, or implements a policy which subjects, or causes to be subjected that plaintiff to the deprivation of any rights secured by the Constitution." *Id.* at 1248 (alterations incorporated).  Thus, a plaintiff must show that a subordinate violated the Constitution and an affirmative link between the supervisor and the constitutional violation.  *Id.* An "affirmative link" requires "(1) personal involvement, (2) sufficient causal connection, and (3) culpable state of mind." *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010).

Plaintiff fails to allege facts identifying the specific policies over which Defendant Spurlock possessed supervisory responsibility or demonstrating that Defendant Spurlock acted with a "constitutionally requisite state of mind." *Cox*, 800 F.3d at 1249.  Plaintiff has therefore failed to state a claim against Defendant Spurlock for First Amendment violations.

Accordingly, Defendant Spurlock's motion to dismiss Plaintiff's First Amendment claim against him in his individual capacity should be granted, and Defendant Spurlock should be granted qualified immunity on the claim.

### 3.      *Official Capacity Claims*

"An action against a person in his official capacity is, in reality, an action against the government entity for whom the person works." *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1009 (10th Cir. 1998).  To state a § 1983 claim against a governmental entity, a plaintiff must allege the existence of: (1) an official policy or custom; (2) a direct causal link between the

policy or custom and the constitutional injury alleged; and (3) deliberate indifference on the part

of the municipality.  *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769–71

(10th Cir. 2013) (a plaintiff must "show that the policy was enacted or maintained with

deliberate indifference to an almost inevitable constitutional injury").

A governmental entity is not liable under § 1983 for the acts of its employees under a

respondeat superior or vicarious liability theory.  *Pietrowski*, 134 F.3d at 1009.  Rather, the

governmental entity "must be shown to have contributed to the constitutional violation through

execution of its policy or custom."  *Id.*  The "official policy or custom" requirement is "intended

to distinguish acts of the municipality from acts of the employees of the municipality, and

thereby make clear that municipal liability is limited to action for which the municipality is

actually responsible."  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (emphasis in

original).

A plaintiff can establish the existence of a municipal policy or custom by demonstrating

any of the following:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a
> widespread practice that, although not authorized by written law or express
> municipal policy, is so permanent and well settled as to constitute a custom or
> usage with the force of law; (3) the decisions of employees with final
> policymaking authority; (4) the ratification by such final policymakers of the
> decisions—and the basis for them—of subordinates to whom authority was
> delegated subject to these policymakers' review and approval; or (5) the failure to
> adequately train or supervise employees, so long as that failure results from
> deliberate indifference to the injuries that may be caused.

*Waller v. City of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019).  Plaintiff's Complaint contains

conclusory assertions that Sheriff Spurlock maintains a policy or custom that was allegedly the

cause of Plaintiff's injury (*see* Compl., ¶ 42) but is devoid of any factual allegations which, if

true, establish the existence of any of the foregoing means for demonstrating an official policy or custom.

First, the Complaint does not allege that DCSO maintains a formal policy authorizing its employees to remove comments from its Facebook page if the viewpoints expressed in the comments are ones with which DCSO disagrees.

Second, the Complaint does not plead any facts suggesting DCSO has an unofficial custom or practice of removing comments from its Facebook page if the viewpoint expressed in the comments is contrary to that of DCSO.  Establishing a custom requires proof of "acquiescence in a longstanding practice or custom which constitutes the 'standard operating procedure' of the local governmental entity." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989).  However, Plaintiff alleges only a single occurrence of comments having been removed from the DCSO Facebook page.

Third, Plaintiff's Complaint does not allege facts evidencing that anyone with policymaking authority made the decision to remove comments from the DCSO Facebook page. "The inquiry of whether a government employee is a policy-making official is a question of state law." *Brammer-Hoelter v. Twin Peaks Charter Academy*, 602 F.3d 1175, 1189 (10th Cir. 2010). "In deciding whether an official is a final policymaker, 'we are interested only in delegations of legal power.' " *Id.* (citation omitted) (emphasis omitted).  Plaintiff does not allege that his comments were removed by a final policymaker.  Rather, Plaintiff alleges Jane and/or John Does working at DCSO are alleged to have removed the content and Sheriff Spurlock, whom Plaintiff alleges to be a policymaker, is alleged to have failed to "[i]ntervene and or supervise."  (Compl.,

¶¶ 7, 39, 40.)  These factual allegations do not support a municipal policy predicated on a decision by a final policymaker.

Fourth, the Complaint is also devoid of any facts that could establish ratification. Municipal liability under section 1983 based upon a ratification theory requires factual allegations establishing that a final decision-maker has ratified an employee's specific unconstitutional actions, as well as the basis for those actions.  *Bryson v. City of Okla. City*, 627 F.3d 784, 790 (10th Cir. 2010).  Plaintiff's only allegations regarding Sheriff Spurlock are that he failed to "intervene and or supervise" the workers that purportedly removed Plaintiff's comments from the DCSO Facebook page.  (Compl., ¶¶ 40–41.)  Plaintiff has not alleged any facts which, if true, would demonstrate that Sheriff Spurlock was made aware the comments had been removed specifically because of the viewpoint expressed in the comments and that Sheriff Spurlock ratified the removal and the reason for the removal.

Finally, a plaintiff bears a heavy burden when asserting a municipal claim based on an alleged failure to train or supervise.  A municipality may be liable for a failure to adequately train or supervise its employees only where that failure results from the municipality's deliberate indifference to the injuries caused as a result.  *Brammer-Hoelter v. Twin Peaks Charter Academy*, 602 F.3d 1175, 1189 (10th Cir. 2010).  As the Tenth Circuit has explained, the deliberate indifference standard "is a 'stringent standard of fault[.]' "  *Murphy v. City of Tulsa*, 950 F.3d 641, 650–51 (10th Cir. 2019) (citations omitted).  "To satisfy this stringent standard, [a plaintiff] need[s] to show that the [municipality] had 'actual or constructive notice that its action or failure to act [was] substantially certain to result in a constitutional violation' and 'consciously or deliberately [chose] to disregard the risk of harm.' "  *Id.* (citations omitted); *see also Connick*

*v. Thompson*, 563 U.S. 51, 61 (2011) ("'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.") (quotation omitted); *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) ("Only where a failure to train [or supervise] reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by our prior cases—can a city be liable for such a failure under § 1983.") (alteration added).

A plaintiff may be able to establish deliberate indifference on the part of a municipality "when the municipality has actual or constructive notice that its action or failure is substantially certain to result in a constitutional violation, and it consciously and deliberately chooses to disregard the risk of harm." *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1318 (10th Cir. 2002) (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1999)). Typically, a plaintiff must be able to establish a pattern of constitutional violations of a similar nature by untrained or unsupervised employees to meet the stringent standard of deliberate indifference. *Waller*, 932 F.3d at 1285. "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.* (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)). As the Supreme Court has explained, a more lenient standard "would result in de facto respondeat superior liability on municipalities . . . ." *Connick*, 563 U.S. at 62 (quoting *City of Canton*, 489 U.S. at 392). Plaintiff's allegations fall short of meeting the heavy burden of establishing municipal liability predicated on a failure to train or supervise. The Complaint is devoid of factual allegations establishing a pattern of constitutional violations akin to those alleged by Plaintiff that could even arguably demonstrate deliberate indifference at the municipal

level.  Plaintiff's reliance on this single incident fails to satisfy his burden to "show a defendant had actual or constructive knowledge that a particular omission . . . caused officials to violate citizens' constitutional rights and nonetheless [made] a conscious choice" to allow constitutionally violative conduct on the part of DCSO workers to continue.  *Carmody v. Ensminger*, No. 16–cv–02603–PAB–NYW, 2017 WL 4150601, at *5 (D. Colo. Sept. 19, 2017) (citing *Connick*, 563 U.S. at 61) (emphasis in original)).

Plaintiff's allegations fail to link any claimed individual violation of his First Amendment rights to a municipal policy or custom that was moving force behind the alleged violation. Accordingly, Plaintiff's official capacity claims for declaratory and injunctive relief against Sheriff Spurlock should be dismissed.

**B.     Motion to Amend**

**1.     Rule 8**

Although Plaintiff's *pro se* pleadings must be liberally construed, his *pro se* status does not excuse him from complying with the fundamental requirements of the Federal Rules of Civil Procedure.  *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Ogden v. San Juan Cnty.*, 32 F.3d 452, 455 (10th Cir. 1994).

The court has reviewed Plaintiff's proposed Second Amended Complaint and finds that it does not comply with the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure.  The twin purposes of a complaint are to give the opposing parties fair notice of the basis for the claims against them so that they may respond and to allow the court to conclude that the allegations, if proven, show that the plaintiff is entitled to relief.  *See Monument Builders of Greater Kansas City, Inc. v. American Cemetery Ass'n of Kansas*, 891 F.2d 1473, 1480 (10th

Cir. 1989).  The requirements of Rule 8 are designed to meet these purposes.  Specifically, Rule 8(a) provides that a complaint "must contain (1) a short and plain statement of the grounds for the court's jurisdiction, . . . ; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought . . . ."  The philosophy of Rule 8(a) is reinforced by Rule 8(d)(1), which provides that "[e]ach allegation must be simple, concise, and direct."  Taken together, Rules 8(a) and (d)(1) underscore the emphasis placed on clarity and brevity by the federal pleading rules.  Prolix, vague, or unintelligible pleadings violate the requirements of Rule 8.

In his proposed Second Amended Complaint, which is 64 pages long and double the length of his initial Complaint, Plaintiff fails to set forth a short and plain statement of his claims showing that he is entitled to relief.  *See* Fed. R. Civ. P. 8(a)(2).  The massive length of the Second Amended Complaint evidences a failure to comply with Rule 8.  *See Mann v. Boatright*, 477 F.3d 1140, 1148 (10th Cir. 2007) (affirming dismissal of 99-page complaint because "[i]n its sheer length, [plaintiff] has made her complaint unintelligible 'by scattering and concealing in a morass of irrelevancies the few allegations that matter' " (citation omitted)); *Schupper v. Edie*, 193 F. App'x 744, 745–46 (10th Cir. 2006) (affirming dismissal of 38-page complaint plus 120 pages of exhibits as "overly long" and "prolix"); *Luciano v. Perez*, No. 06–cv–01284–PSF–PAC, 2007 WL 1306476, at *2 (D. Colo. May 3, 2007) (a complaint did not comply with Rule 8 where it contained hyperbole, redundancies, and "astoundingly long" sentences that neither the court nor the opposing party could understand.)

Plaintiff's proposed Second Amended Complaint does not comply with Rule 8.  As such, his motion to amend should be denied.  Even if the court finds Plaintiff's proposed Second

Amended Complaint complies with Rule 8, however, the Motion to Amend should be denied because Plaintiff's proposed new claims are barred by the statute of limitations.

### 2.     *Rule 15*

Plaintiff seeks to assert three new § 1983 claims against Sheriff Spurlock for First Amendment retaliation (Claim Two), unlawful seizure or arrest (Claim Three), and violation of Plaintiff's equal protection rights (Claim Four).  The new claims arise out of DCSO's alleged response to Plaintiff's requests for records relating to a shooting on December 31, 2017, in Highlands Ranch, Colorado, that resulted in the deaths of DCSO Deputy Zackari Parrish and Highland's Ranch resident Matthew Riehl (the "Incident").  (Doc. No. 19–3 at 62–68.)  The new claims are not predicated on DCSO's alleged removal of Plaintiff's postings from its Facebook page.  (*See, generally,* Doc. No. 19–3.)

"Generally, leave to amend should be freely granted when justice requires, but amendment may be denied when it would be futile."  *AGI Consulting L.L.C. v. Am. Nat'l Inc. Co.*, 798 F.App'x 296, 301 (10th Cir. 2020) (quoting *Moya v. Garcia*, 895 F.3d 1229, 1239 (10th Cir. 2018)).  Defendant Spurlock argues that the amendments sought in the proposed Second Amended Complaint are futile, and Plaintiff's Motion to Amend should be denied.  (Resp. Mot. Amend.)

### a.     *Statute of Limitations*

Section 1983 establishes a federal cause of action, but certain aspects of the claim are borrowed from state law.  *Wallace v. Kato*, 549 U.S. 384, 387 (2007).  "State statutes of limitations applicable to general personal injury claims supply the limitations periods for § 1983 claims . . . ."  *Beck v. City of Muskogee Police Dept.*, 195 F.3d 553, 557 (10th Cir. 1999)

(internal citations omitted).  Applying Colorado law, applicable here, the statute of limitations governing Plaintiff's § 1983 claim is two years.  *Blake v. Dickason*, 997 F.2d 749, 751 (10th Cir. 1993*); see also* Colo. Rev. Stat. § 13–80–102(1)(i).

While state law provides the length of the statute of limitations, "the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." *Wallace*, 549 U.S. at 388 (emphasis in original).  Under federal common law tort principles, a plaintiff's cause of action under § 1983 accrues when the plaintiff has a "complete and present cause of action," such that "the plaintiff can file suit and obtain relief[.]"  *Id.* (quoting *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp.*, 522 U.S. 192, 201 (1997)); *see also Chrisco v. Holubek*, 711 F.App'x 885, 888 (10th Cir. 2017) ("a § 1983 claim accrues 'when the plaintiff knows or has reason to know of the injury which is the basis of his action'") (quoting *Kripp v. Luton*, 466 F.3d 1171, 1175 (10th Cir. 2006)).  A cause of action for a civil rights violation generally accrues "when the plaintiff knows or has reason to know of the injury which is the basis of the action."  *Baker v. Bd. of Regents*, 991 F.2d 628, 632 (10th Cir. 1993). " 'A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence.' "  *Browning v. Davis*, No. 13–cv–01203–MSK–KMT, 2014 WL 4783571, *2 (D. Colo. Sept. 25, 2014) (quoting *Indus. Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 969 (10th Cir. 1994)).  "Plaintiffs do not need to know the full extent of their injuries before the statute of limitation begins to run."  *Browning*, 2014 WL 4783571, at *2.

### 1. *Claim Two*

"In the First Amendment retaliation context, a claim accrues 'when the plaintiff knows or has reason to know of the injury that is the basis for the action.'" *McDonald v. Sch. Dist. No. 1*, 83 F. Supp. 3d 1134, 1143 (D. Colo. 2015) (quoting *Mata v. Anderson*, 635 F.3d 1250, 1252 (10th Cir. 2011). Courts have routinely concluded that a retaliation claim accrues when the retaliatory act occurs, at least where the plaintiff is aware of the occurrence. *See, e.g., Grissom v. Rohling*, 431 F.App'x 693, 697 (10th Cir. 2011) (plaintiff's First Amendment retaliation claim was untimely where alleged act of retaliation occurred beyond the applicable statute of limitations); *Taylor v. City of Claremore*, No. 18–CV–269–GFK–FHM, 2019 WL 3482965, *7 (N.D. Okla. July 31, 2019) (rejecting First Amendment retaliation claim to the extent it was predicated on alleged retaliatory actions that occurred outside the applicable limitations period); Walker v. Firman, No. 16–cv–02221–RBJ–MEH, 2017 WL 4652015, *4 (D. Colo. Oct. 17, 2017) (accepted and adopted at 2017 WL 6350204, *5 (D. Colo. Dec. 13, 2017)) (finding alleged First Amendment retaliatory acts that occurred more than two years prior to filing to be untimely); *Gutierrez v. Rodriguez*, No. 14–0567MCA/GBW, 2015 WL 13590154, *3 (D.N.M. May 22, 2015) (finding the plaintiff's First Amendment retaliation claim to be time-barred where his allegations demonstrated that his alleged retaliatory arrest and charging occurred more than two years prior to filing); *McDonald v. Sch. Dist. No. 1*, 83 F. Supp. 3d 1134, 1143 (D. Colo. 2015) (finding alleged retaliatory acts that occurred more than two years prior to filing to be time-barred); *Newsome v. Geo Group, Inc.*, No. 12–733 MCA/GBW, 2013 WL 12328903, *4 (D.N.M. Aug. 6, 2013) (finding alleged First Amendment retaliation claim to be time-barred where alleged act of retaliation occurred outside the applicable statute of limitations).

Plaintiff alleges in his proposed Second Amended Complaint that he was stopped by a DCSO deputy, Deputy E. Seal, after a May 30, 2019 press conference.  (Doc. 19–3 at 51.)  Plaintiff alleges that the officer stood in a doorway, preventing Plaintiff from leaving the building, and that the officer told Plaintiff that if Plaintiff continued to post lies about Deputy Parrish, "things are going to happen" to him.  (*Id.* at 52–53.)  Plaintiff alleges that he then pulled out his phone, and one of his friends pointed a camera at the officer, and the officer promptly told them to have a nice day and presumably left. (*Id.* at 53.)  The proposed Second Amended Complaint alleges that the conversation at issue was "short and to the point."  (*Id.* at 52.)  After that, Plaintiff alleges that he promptly packed his things and left Douglas County. (*Id.* at 53.)

These allegations demonstrate that Plaintiff was aware of his injury no later than May 30, 2019.  Plaintiff's alleged seizure, and his conversation with Deputy E. Seal referencing Plaintiff's Facebook posts, all took place in a short period of time on May 30, 2019.  Moreover, Plaintiff alleges that Deputy E. Seal specifically referenced Plaintiff's postings—his First Amendment speech—during their conversation.  This interaction is the only First Amendment retaliatory conduct alleged in the proposed Second Amended Complaint.  (Doc. 19–3, ¶ 62.)  These allegations in the proposed Second Amended Complaint demonstrate that Plaintiff knew or had reason to know of the alleged retaliatory conduct when he left the premises of the press conference on May 30, 2019.  Thus, Plaintiff's First Amendment retaliation claim based on his interaction with Deputy E. Seal accrued no later than May 30, 2019.

### 2. *Claim Three*

Plaintiff's Claim Three alleges that he was unlawfully seized and/or falsely arrested in violation of his Fourth Amendment rights.  (Doc. 19–3 at 66–67.)  "Such a claim accrues 'when

the plaintiff is released or legal process is instituted justifying that imprisonment.' " *Heter v. City of Hutchinson*, 851 F.App'x 874, 875–76 (10th Cir. 2021) (quoting *Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008)); *see also Wallace*, 549 U.S. at 389 (looking to common law false imprisonment claims for purposes of determining when a claim for unlawful seizure under the Fourth Amendment accrues and concluding that "to determine the beginning of the limitations period . . ., we must determine when petitioner's false imprisonment came to an end"); *Stevenson v. Grace*, 356 F.App'x 97, 98 (10th Cir. 2009) ("a Fourth Amendment claim for false arrest/false imprisonment accrues when the victim is released from custody or when the victim is bound over on charges, whichever occurs first").

As with Claim Two, Plaintiff was aware of his alleged seizure at the time it occurred. Plaintiff alleges that his seizure occurred following a press conference that he held on May 30, 2019. (Doc. 19–3 at 48, 51–53.) Once Deputy E. Seal left the premises of the press conference, Plaintiff was released from any alleged detention. At that point, Plaintiff knew or had reason to know of the injury of which he now complains. Accordingly, Plaintiff's Fourth Amendment claim accrued on May 30, 2019.

### 3.  *Claim Four*

As with his other § 1983 claims, Plaintiff's Claim Four, which alleges a violation of Plaintiff's equal protection rights, accrued when he knew or had reason to know of the injury that is the basis for his action. *Chrisco*, 711 F.App'x at 888. Plaintiff alleges that his equal protection rights were violated because it took DCSO 23 days to fulfill his request for copies of body worn camera footage from the Incident. (Doc. 19–3 at 48.) According to the proposed Second Amended Complaint, "[n]one of the Media, whose reporters are majority white waited

23 days for the body camera videos." (*Id.*)  The allegations in the proposed Second Amended Complaint demonstrate that Plaintiff knew or had reason to know of his alleged injury no later than June 7, 2019, when he received copies of the requested body worn camera footage.  The proposed Second Amended Complaint acknowledges that the media recipients, to which he compares himself, had already received the footage "sometime ago."  (*Id.* at 46.)  Indeed, Plaintiff alleges that he reported that fact to DCSO, and requested contact with a supervisor, on June 4, 2019.  (*Id.* ["I also know the footage I am requesting has already been released to other Media outlets.  I am requesting the name of your supervisor."].)  Plaintiff further alleges that he had a telephone conversation with DCSO employee Michelle Trujillo on June 7, 2019, during which Ms. Trujillo allegedly told him that Sheriff Spurlock had "delayed your approval" and that "it usually doesn't take this long."  (*Id.* at 47.)

When Plaintiff received the video footage on June 7, 2019, he had in his possession all of the facts upon which he currently bases his equal protection claim, which derives largely from his perception of the time within which other members of the media had already received the video footage and his knowledge of the time it took for him to receive the footage.  Based on those allegations, Plaintiff's equal protection claim accrued no later than June 7, 2019.  *See, e.g., Frank v. City of Ft. Collins*, No. 18–cv–03204–RBJ, 2019 WL 3935176, *5 (D. Colo. Aug. 20, 2019) (dismissing the plaintiff's equal protection claim predicated on disparate disciplinary treatment that occurred more than two years prior to plaintiff bringing the claims where the allegations in her complaint evidenced that she should have known of the disparate treatment); *Brown v. Berthoud Fire Protection Dist.*, No. 12–cv–03028–REB–KLM, 2013 WL 6152301, *2–*3 (D. Colo. Nov. 22, 2013) (finding the plaintiff's equal protection claim accrued when he

was terminated, at which time "he was aware of his perception that he was the only qualified firefighter denied light duty within the ten years prior to 2010" and that "[t]his perception is the basis for his equal protection claim").

Plaintiff first asserted the underlying factual allegations and claims set forth in Claims Two through Four in his Amended Complaint on August 9, 2021.[2]  (*See* Doc. 14–3 at 42–54 & 64–68 (underlining reflects new allegations).)  However, the allegations in the proposed Second Amended Complaint filed with Plaintiff's Motion to Amend demonstrate that those claims accrued no later than May 30, 2019 (Claims Two and Three) or June 7, 2019 (Claim Four).  Thus, each of Plaintiff's New Claims accrued more than two years prior to Plaintiff's assertion of the claims in the Amended Complaint and fall outside the applicable statute of limitations.

### b.   *Relation Back*

Federal Rule of Civil Procedure 15(c), governing the relation back of amendments, provides that amendments to claims asserted in a pleading relate back to the date of the original pleading if "the amendment asserts a claim or defense that arose out of the conduct, transaction or occurrence set out—or attempted to be set out—in the original pleading[.]"  Fed. R. Civ. P. 15(c)(1)(B).  "[A]n amendment does not relate back 'when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth.' " *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1018 (10th Cir. 2013) (quoting *Mayle v. Felix*, 545 U.S. 644, 650 (2005)).  "A new pleading cannot relate back if the effect of the new pleading 'is to fault [the defendants] for conduct different from that identified in the original

---

[2] On August 9, 2021, Plaintiff filed an Amended Complaint and Jury Trial Demand without first seeking leave of the court.  (Doc. 14.)  This court struck the Amended Complaint because it was filed in violation of Federal Rule of Civil Procedure 15(a).  (Doc. No. 15.)

complaint,' even if the new pleading 'shares some elements and some facts in common with the original claim.' " *Full Life Hospice*, 709 F.3d at 1018 (quoting *United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, 698 F.3d 871, 881 (D.C. Cir. 2010)).

The fact that Plaintiff filed his Initial Complaint in March 2021 does not salvage the proposed new claims because the allegations giving rise to Claims Two through Four do not relate back to the date of the Initial Complaint. Rather, the proposed new claims differ in both time and type from the First Amendment claim asserted in Plaintiff's Initial Complaint. The proposed new claims are based on entirely separate factual allegations relating to events that allegedly took place at different times than the alleged removal of Plaintiff's posts set out in the Initial Complaint.

Claims Two and Three are premised on a previously unalleged encounter between Plaintiff and Deputy E. Seal on May 30, 2019, during which Plaintiff alleges he was unlawfully seized or arrested. (Doc. 19–3 at 48–53.) Claim Four alleges that Plaintiff was treated differently than white journalists in connection with a request for body worn camera footage from the Incident that he submitted to DCSO on May 15, 2019, and that DCSO fulfilled on June 7, 2019. (Doc. 19–3 at 43, 47.) In contrast, Plaintiff's initial Complaint only asserts a claim arising out of the alleged removal of postings he made on DCSO's Facebook page. The proposed new claims contained in the proposed Second Amended Complaint seek to "interject entirely different facts, conduct, transactions or occurrences." *Benton v. Bd. of Cnty. Comm'rs*, No. 06–cv–01406–PSF–MEH, 2007 WL 4105175, *4 (D. Colo. Nov. 14, 2007) (quoting *Kidwell v. Bd. of Cnty. Comm'rs of Shawnee Cnty.*, 40 F. Supp. 2d 1202, 1217 (D. Kan. 1998), *aff'd*, 189 F.3d 478 (10th Cir. 1999)). As a result, they do not relate back to Plaintiff's initial Complaint.

*See, e.g., Walker v. Amling*, No. 18–cv–00826–NYW, 2018 WL 6528135, *4–*5 (D. Colo. Dec. 12, 2018) (finding plaintiff's allegations of wide-spread misconduct against the city did not relate back to plaintiff's initial allegations, which focused on alleged misconduct during a single traffic stop involving the plaintiff); *Benton*, 2007 WL 4105175, *4 (finding plaintiff's Fifth Amendment claim alleging that her termination violated due process did not relate back to her initial allegations that her termination was retaliatory where the initial pleading contained "no allegations, express or implied, relating to whether she had a protected property interest in her employment such that she was entitled to due process").

Because the proposed new claims do not relate back to Plaintiff's Initial Complaint, they are barred as untimely.  Accordingly, Plaintiff's proposed Second Amended Complaint seeking to add these claims to the lawsuit is futile, and the Motion to Amend should be denied.

**WHEREFORE**, for the foregoing reasons, this court respectfully **RECOMMENDS** that

1. "Sheriff Spurlock's Motion to Dismiss" (Doc. No. 9) be **GRANTED.**  Plaintiff's official-capacity claims for money damages are barred by the Eleventh Amendment and should dismissed for lack of subject matter jurisdiction.  Plaintiff's First Amendment claim against Defendant Spurlock in his individual capacity should be dismissed with prejudice, and Defendant Spurlock should be granted qualified immunity on the claim.  And Plaintiff's official capacity claims for declaratory and injunctive relief against Sheriff Spurlock should be dismissed with prejudice.

2. Plaintiff's "Motion for Leave to File a Second Amended Complaint" (Doc. No. 19) should be **DENIED**.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of this Recommendation, any party may serve and file written objections to the magistrate judge's proposed findings of fact, legal conclusions, and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Griego v. Padilla (In re Griego)*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for de novo review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. 2121 East 30th Street*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar de novo review by the district judge of the magistrate judge's proposed findings of fact, legal conclusions, and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings of fact, legal conclusions, and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579–80 (10th Cir. 1999) (holding that the district court's decision to review magistrate judge's recommendation de novo despite lack of an objection does not preclude application of "firm waiver rule"); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Refining Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (finding that cross-claimant waived right to appeal certain portions of magistrate judge's order by failing to object to those portions); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (finding that plaintiffs waived their right to appeal the magistrate judge's ruling by failing to file objections).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116,

1122 (10th Cir. 2005) (holding that firm waiver rule does not apply when the interests of justice require review).

Dated this 24th day of January, 2022.

BY THE COURT:

_____
Kathleen M. Tafoya
United States Magistrate Judge